IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ASHLEY N. STEELE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 C 3833 |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) | Magistrate Judge Susan E. Cox |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Ashley N. Steele ("Plaintiff") appeals the Commissioner of Social Security's decision to deny her Social Security disability benefits under Title II of the Social Security Act. Plaintiff has filed a motion for summary judgment [dkt.19]. We hereby grant Plaintiff's motion and deny the Commissioner's motion for summary judgment [dkt. 21]. The Administrative Law Judge's decision is reversed and remanded for further proceedings consistent with this opinion.

## STATEMENT

Plaintiff appeals the Commissioner of Social Security's decision to deny her Social Security disability benefits under Title II of the Social Security Act. *See* 42 U.S.C. §§ 404(g), 216(i), 223(d). Plaintiff filed a motion for summary judgment, and a motion for summary judgment has also been filed on behalf of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"). For the reasons outlined below, we grant Plaintiff's motion and deny the Commissioner's motion. The Administrative Law Judge's decision is reversed and remanded for further proceedings consistent with this opinion.

Plaintiff applied for Social Security Disability Insurance benefits on February 11, 2011, for an unspecified neurological issue that caused weakness on Plaintiff's left side and limbs, lesions on the brain, weakness in her left limbs, depression, and asthma. (R. 242.) Her

1

application was denied by the Social Security Administration on May 20, 2011; she filed for reconsideration, which was also denied. Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before ALJ Rebecca LaRiccia on January 17, 2013.

Following the hearing, the ALJ determined, *inter alia*, that: 1) there was a continuous 12-month period during which the Plaintiff did not engage in substantial gainful activity; 2) Plaintiff's severe impairments include depression, anxiety, obesity, and undifferentiated neuropathic pain; 3) Plaintiff's impairments do not meet, either individually or in combination, the severity requirements of the listing in 20 CFR 404, Subpart P, Appendix 1; 4) the Plaintiff has the Residual Functional Capacity ("RFC") necessary to perform light work as defined in 20 CFR 404.1567(b), as long as she never climbs ropes, ladders, or scaffolds, only occasionally climbs ramps and stairs, only occasionally balances or crouches, has the ability to frequently stoop or kneel, and should avoid concentrated exposures to hazards such as unprotected heights and dangerous moving machinery; 5) given the Plaintiff's RFC, the ALJ believed that the Plaintiff is not capable of performing any of her past relevant work; and 6) there are jobs in significant number that Plaintiff can perform. (R. at 20-30.)

The record contains several consultations with mental health professionals, as well as treatment notes from Plaintiff's counselors for her anxiety and depression. Many of these documents contain a Global Assessment of Functional Scale ("GAF") score. Although the GAF has been abandoned in the most recent version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM V"), it was used in the previous version of that text ("DSM IV"), and is often relied on by doctors, ALJs, and judges in social security cases. *See Caldwell v. Colvin*, 2014 WL 4328317, at *5 n.2 (S.D. Ind. Aug. 27, 2014). A score between 41 and 50 represents

"serious symptoms" or a "serious impairment in social, occupational, or school functioning." *Id*. A score between 51 and 60 represents "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." *Id.* Anything above 60 would indicate mild symptoms. *Id.*

The Plaintiff received mental health treatment from Nowell and Associates Counseling Firm in 2010. (R. at 399-446.) The record shows that she was being treated for depression, suicidal ideation, and childhood trauma. (*Id.*) On May 17, 2010, Plaintiff was determined to have a GAF of 56-60 (R. at 403); on June 21, 2010, her GAF was assessed at 60 (R. at 407).

On April 27, 2011, Dr. Herman P. Langner performed a 30-minute consultative examination of the Plaintiff, and assigned a GAF of 55. (R. at 506-508.) On August 29, 2011, William N. Nilger, Ph.D., performed a consultative psychological examination of the Plaintiff, which lasted approximately one hour; prior to the examination, Dr. Nilger reported that he had only reviewed Dr. Langner's report. (R. at 514-518.) Following the examination, Dr. Nilger reported that Plaintiff suffered from "[p]ossible organic brain syndrome" and noted a GAF score of 60. (R. at 517.)

Plaintiff also began receiving treatment from Metropolitan Family Services Mental Health beginning in December 2011, and continued treating there until April 2012. Although the dates on the records from Metropolitan Family Services are not the model of clarity, it appears that Plaintiff was initially diagnosed as having a GAF score of 49 on January 4, 2012. (R. at 809, 819.) On February 28, 2012, Plaintiff's GAF score had improved to a 56. (R. at 801.) Upon discharge, on April 3, 2012, she was either at a 60 or a 64. (R. at 805, 826.)

In December 2012, Plaintiff underwent a neuropsychological evaluation with Toby G. Motycka, Psy. D. The evaluation took place over two separate days – December 19 and

December 26 – with both sessions averaging approximately 3 hours per session. (R. at 838-843.) Dr. Motycka's diagnoses included major depression, anxiety, and a GAF of 45. (R. at 842.)

According to the ALJ, "the [GAF] scores in the file are generally consistent with mild to moderate deficits globally." (R. at 28.) The GAF score of 45 assigned by Dr. Motycka was discounted because it "was a one time evaluation and not consistent with her overall scores," and was "given no weight based on this being a 1 to 2 day examination with no treatment relationship." (R. at 28-29.) The ALJ noted that low GAF scores are "not dispositive" because they only measure "psychological, social, and occupational functioning," but "serious symptoms on the GAF scale [do not] translate directly into extreme, marked, or even moderate degrees of limitations on the functional limitation scale used by Social Security." (R. at 28.)  However, the ALJ did not then go on to explain how the Plaintiff's mental impairments, and the limitations associated therewith, would support the RFC finding listed above. Additionally, the ALJ stated that "credibility [was] a significant factor . . . given the absence of any confirmed etiology for pain" and noted that Plaintiff "is able to perform a wide variety of activities of daily living independently," such as crocheting, playing cards, watching movies, dressing, and bathing. (R. at 28). The activities were cited as reasons to doubt the veracity of Plaintiff's reports regarding her pain, and to support the ALJ's finding that she could perform light work with certain restrictions.

## DISCUSSION

### I. STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, if it is supported by substantial evidence, and if it is free of legal error. 20 C.F.R. §§ 404.1520(a) and 416.920(a); 42

4

U.S.C. § 405(g). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). A "minimal[] articulat[ion] of her justification" is enough. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

## II. THE ALJ ERRED BY "CHERRY PICKING" EVIDENCE AND MISSTATING EVIDENCE ON THE RECORD.

It is well established that an "ALJ 'cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.'" *Nichols v. Colvin*, 10 F. Supp.3d 896, 905 (N.D. Ill. 2014) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)). "[A]n ALJ need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion." *Denton*, 596 F.3d at 425 (citing *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)). In this case, the ALJ failed to build a logical bridge from the evidence to his RFC conclusion, and cherry-picked the evidence that supported his conclusion.

First, the ALJ's reasoning for discounting Dr. Motycka's report and GAF score is a classic case of "cherry-picking," and is logically inconsistent. The ALJ decided to give no weight to Dr. Motycka's analysis because it was based on a 1 or 2 day examination with no treatment relationship, but also chose to give "great weight" to the state agency medical consultants. The state agency medical consultants' opinion was even more removed from Plaintiff's treatment, having been based only on a review of the record with no examination of the Plaintiff whatsoever. Furthermore, much of the other consultative reports in the record were *shorter* than the two-day, 6 hour examination undertaken by Dr. Motycka. For example, Dr. Nilger's examination only lasted one hour. Similarly, Dr. Langner's consultation was only 30

5

minutes long. However, the ALJ did not discuss how those consulting physicians' limited interaction with the Plaintiff informed her decision, or what weight she chose to give those opinions. Nor did the ALJ discuss how the Plaintiff's treating counselors' diagnoses and records went into the ALJ's RFC finding. In other words, the ALJ singled out Dr. Motycka's report for being a one-time examination, while failing to consider the one-off nature of the other reports in the record, and relying on the state agency consulting physicians' opinions, even though those opinions could be discounted for the very same reasons that the ALJ cited to give little to no weight to Dr. Motycka; namely, that they were based on an even more limited interaction with the Plaintiff.

Additionally, the ALJ has misstated the evidence that is on the record, stating that the GAF scores in the record are consistent with mild to moderate limitations. That is not the case. As discussed above, mild symptoms would require a score above 60; moderate would be 51-60, and severe would be 41-50. This Court's review of the record reveals the following GAF scores: 56-60 on 5/17/10 (R. at 403), 60 on 6/21/10 (R. at 407), 55 on 4/27/11 (R. at 508), 55 to 60 on 8/29/11 (R. at 517), 56 on 2/28/12 (R. at 801),[1] 64 on 4/3/12 (R. at 805), 49 on 1/4/12 (R. at 809), 49 on 1/4/12 (R. at 819), 60 on 4/3/12 (R. at 826), and 45 on 12/26/12 (R. at 842).[2] There is only one score – the 64 on 4/3/12 – that indicates mild symptoms; the remainder of the scores and mental health records indicate that Plaintiff's symptoms relating to her anxiety and depression were moderate to severe. Thus, the ALJ's statement that "the [GAF] scores in the file are generally consistent with mild to moderate deficits globally" is demonstrably false, and is suggestive of the type of cherry-picking (*e.g.*, focusing on the one GAF score above 60) that has

---

[1] The dates for some of the records are unclear. However, the progression of the GAF scores does not change the fact that the record demonstrates that it tends to show severe to moderate symptoms.
[2] Although they were not before the ALJ, the records that post-date Plaintiff's hearing also suggest that her anxiety and depression symptoms were severe, with several GAF scores in the low 40's. (R. at 927, 952, 957, 971).

been warned against by other courts in this circuit. As such, the ALJ's decision is reversed and remanded.

### III. THE ALJ FAILED TO BUILD A "LOGICAL BRIDGE" BETWEEN EVIDENCE OF PLAINTIFF'S ACTIVITIES AND THE ABILITY TO PERFORM LIGHT WORK.

In this case, the ALJ failed to build a logical bridge between the medical evidence on the record, and her conclusion that Plaintiff is capable of performing "light work" with certain restrictions. "Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 CFR 404.1667; *see also Hermann v. Colvin*, 772 F.3d 1110, 1111 (7th Cir. 2014). According to a Social Security Administration Program Policy Statement, the full range of light work requires a claimant to walk or stand for up to six hours in an eight-hour workday. SSR 83–10, 1983 WL 31251, at *5–6; *see also Thomas v. Colvin*, 534 Fed. Appx. 546, 549 n.1 (7th Cir. 2013).

Here, the ALJ found that the Plaintiff was not credible regarding the pain caused by her neurological condition because "the degree of limitation alleged at the hearing is not consistent with that reported to her physicians." (R. at 28.) To support that position, the ALJ cited the fact that exercise had been recommended, and that Plaintiff reported that she enjoyed crocheting, playing cards, watching movies, and could dress and bathe independently.

However, the ALJ failed to analyze the relationship between the activities that Plaintiff testified she could perform and their relationship to Plaintiff's ability to stand or walk for up to six hours per day. It is unclear from this record how performing occasional chores around the

7

house or sedentary hobbies would be equivalent to, or indicative of, the ability to engage in light work, as defined by the Social Security Administration. *See Nichols*, 10 F. Supp.3d at 906 (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2011)) ("[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ..., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases"). The ALJ failed to consider that such activities can be done at the Plaintiff's own pace and schedule or with the assistance of others, and did not analyze the amount of continuous or prolonged standing or walking that would be required for the Plaintiff to engage in such activities. Without this analysis, the ALJ did not draw the "logical bridge" between the medical records and her ability to perform "light work" (*i.e.* Plaintiff's ability to stand or sit for up to six hours in an eight-hour workday). Failing to do so was legal error, and the ALJ's decision is reversed.

## CONCLUSION

For the foregoing reasons, we remand this matter for further proceedings consistent with this opinion. Plaintiff's motion for summary judgment is granted [dkt. 19] and the Commissioner's motion for summary judgment is hereby denied [dkt. 21].

**ENTER:**
**DATED:** November 16, 2015

Susan E. Cox
United States Magistrate Judge